CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 0 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JUDY F. EDWARDS, )
    Plaintiff, )
)
                                    )   Civil Action No. 7:07cv00048
v. )
)
MICHAEL J. ASTRUE, ) By: Hon. Michael F. Urbanski
COMMISSIONER OF SOCIAL SECURITY )     United States Magistrate Judge
    Defendant. )

## MEMORANDUM OPINION

Plaintiff Judy F. Edwards ("Edwards") brought this action for review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383 ("Act").

The case is before the court on cross motions for summary judgment. Having reviewed the administrative record, and after briefing and oral argument, the decision of the Administrative Law Judge ("ALJ") is affirmed.

### I.

The court may neither undertake a <u>de novo</u> review of the Commissioner's decision nor reweigh the evidence of record. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. <u>See</u> <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), or when it would be

sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Edwards was born on June 4, 1956, attended school through the eleventh grade, and obtained a GED. (Administrative Record [hereinafter "R."] 132-33) Edwards worked as a knitting supervisor at a sock manufacturing plant from July 1990 through January 6, 2005. (R. 112) Edwards filed her application for DIB on April 11, 2005 and for SSI on April 19, 2005.

(R. 64, 215) Edwards' applications alleges a disability onset date of April 4, 2004. (R. 104) Edwards was diagnosed with hypertension, asthma, gastroesophageal reflux disease ("GERD"), depression/anxiety, a history of breast cancer, anemia, and hypothyroidism. (R. 18) Edwards' claim was denied initially on August 23, 2005 and upon reconsideration on October 28, 2005. (R. 31-32)

An ALJ held an administrative hearing in this matter on June 14, 2006, (R. 406-38), and issued a decision finding Edwards not disabled on August 23, 2006. (R. 14-23) The ALJ found the combined effects of Edwards' physical impairments to be severe, but concluded that Edwards does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18) Specifically, at step four of the sequential process, the ALJ found that Edwards could return to her previous work, thus necessitating a finding of not disabled. (R. 22) The Appeals Council denied Edwards' request for review on December 12, 2006, rendering the decision final. (R. 6-8)

Edwards argues that the ALJ's decision is not supported by substantial evidence and must be reversed because the ALJ failed to provide a detailed analysis and explanation for finding Edwards' testimony about her symptoms not fully credible. Further, Edwards argues that because of her diminished capacity to use her hands in repetitive tasks, the ALJ erred in determining that she could return to her previous work as a sewing and knitting machine operator at step four of the sequential evaluation process. Edwards also argues that the ALJ failed to give appropriate weight to the opinion of Dr. Mohammed Athar, a non-treating,

examining physician. Edwards further requests that the court consider additional evidence submitted on April 27, 2007 before rendering a decision.

The Commissioner argues that the decision of the ALJ is supported by substantial evidence because nothing in the record indicates that Edwards' physical impairments would result in functional limitations that would prevent her from working. Further, the Commissioner argues that the ALJ appropriately considered Dr. Athar's opinion and found that it was unsupported by his own examination notes as well as the record as a whole. The Commissioner relies on an assessment of Edwards' residual functional capacity ("RFC") completed by two state agency physicians that indicates that Edwards can work in some capacity. (R. 327-331) After reviewing the administrative transcript, considering the briefs and oral argument, and considering the standard of review in social security disability appeals, the decision of the Commissioner is affirmed.

### III.

Understanding the medical evidence of record is necessary to assess whether the decision of the ALJ is supported by substantial evidence. Edwards had a mammogram on March 4, 2004 which showed a lump in her left breast. (R. 166) On March 18, 2004, a needle biopsy revealed that the tumor was malignant. (R. 175) Dr. Timothy Chavis performed a needle localized excisional biopsy with left axillary sentinel node biopsy on April 5, 2004 to remove the tumor. (R. 155-165) Edwards followed up with Dr. Chavis and underwent thirty-three radiation treatments from May 17, 2004 through July 19, 2004. (R. 143) On April 29, 2004, Dr. Chavis

4

noted that Edwards' wound "looks good and is healing well," but also noted hyperemia[1] medially on her left breast. (R. 182) The hyperemia remained essentially unchanged until July 22, 2004, when it intensified as a result of the change in her radiation therapy. (R. 194) Around this time, Edwards also started feeling pain in her left breast that intensified over time. (R.143-44, 139-40, 192-93, 210, 208) On October 19, 2004, Dr. Chavis noted that Edwards was "fairly debilitated with constant and unremitting breast pain." (R. 192) On December 21, 2004, Dr. Chavis discussed with Edwards the possibility of a mastectomy because of the debilitating pain, and Edwards decided to pursue this option. (R. 208-09) Dr. Chavis performed a simple left mastectomy on January 7, 2005 and continued to follow-up with Edwards through April 7, 2005, during which time, Dr. Chavis treated Edwards for seroma.[2] (R. 149-50, 151-54, 211-43) Dr. Chavis decided not to aspirate the seroma because it was not tense and there was no sign of infection. (R. 247)

Dr. Chavis referred Edwards to Dr. Philip Grubbs, Jr. to discuss the possibility of a right breast reduction because of problems associated with the size of her breast. (R. 312) On April 5, 2005, Dr. Grubbs noted that Edwards "has significant pain in the upper back, shoulder and neck, as well as a rash underneath the breast" due to the size of her breast. (R. 312) Further, because of the left breast mastectomy, Edwards was "extremely out of balance with that overly-enlarged, heavy ptotic breast." (R. 312) After discussing the risks and benefits associated with the breast reduction, Edwards decided to proceed with the surgery. (R. 313) Using the free

---

[1] Hyperemia is an increase of blood in a particular area of the body. Dorland's Illustrated Medical Dictionary 881 (30th ed. 2003).

[2] Seroma is "a tumorlike collection of serum in the tissues." Dorland's Illustrated Medical Dictionary 881 (30th ed. 2003).

5

nipple graft technique, Dr. Grubbs performed the right breast reduction on May 25, 2005. (R. 288) Dr. Grubbs saw Edwards again on June 10, 2005 and noted that she was progressing well post-operatively. (R. 301)

Edwards also has a history of musculoskeletal difficulties associated with her neck, upper back, and left arm. On February 5, 2004, an MRI of Edwards' cervical spine revealed a "[c]entral and left sided disc herniation at C5-6" and "broad based disc bulging slightly to the left side at C6-7." (R. 359) Edwards started physical therapy on February 19, 2004 in order to alleviate her pain. (R. 350) At her initial patient evaluation, Edwards described her pain as "radiating, aching, sore, pulling, and unbearable," and indicated that she was "unable to sleep at night because of her pain." (R. 350) Further, Edwards experienced occasional numbness in two of the fingers on her left hand. (R. 350) Edwards underwent physical therapy six times from February 19, 2004 through March 5, 2004 and at her last appointment she reported her pain level to be zero out of ten and that the numbness in her fingers had significantly decreased. (R. 356-57)

On February 2, 2004, Edwards was referred to Dr. James Castle for evaluation of her respiratory problems. (R. 295-96) Dr. Castle noted that Edwards "showed evidence of moderate airway obstruction with a significant response of 19% to bronchodilators" and diagnosed her with Chronic Obstructive Pulmonary Disease. (R. 296) Significantly, Dr. Clark noted that Edwards' "chest x-ray from July this year was reviewed and other than obese it did not show any significant findings." On October 14, 2004, Dr. Clark followed up with Edwards and noted that she was not using her prescription Combivent very often because she forgets to, but that when she does she gets significant relief from it. (R. 294) On January 5, 2005, Edwards was seen by

Dr. Kenneth Clark, her primary care physician, who noted that Edwards did not complain of shortness of breath. (R. 271) On March 14, 2005, Edwards was seen by Certified Family Nurse Practitioner ("CFNP") Kimberly Leftwich for complaints of a cough that had persisted for two weeks and shortness of breath. (R. 277-78) CFNP Leftwich advised Edwards to continue taking her medications and to schedule a follow-up with Dr. Clark if symptoms did not improve. (R. 278) Dr. Clark saw Edwards again on April 20, 2005 and noted that her cough had not improved. (R. 279) As a result, Dr. Clark ordered a CT angiography of the pulmonary arteries and a CT of the chest, which was performed on April 27, 2005. (R. 283) Dr. John Bolen, the radiologist who read the CT, noted no findings to indicate pulmonary embolus, identified no pulmonary mass or nodule, and identified no other abnormalities. (R. 283) Following this CT, Edwards was again seen by Dr. Castle, who advised her to continue using the Advair and Combivent, and also prescribed Tessalon for her cough. (R. 293)

On August 14, 2005, Edwards was seen by Dr. Mohammed Athar, a consultative physician, for a disability evaluation. (R. 317-325) Dr. Athar developed a significant patient history that effectively summarized the various ailments afflicting Edwards. Dr. Athar noted that Edwards complained of "short of breath on slight exertion," but that the combination of Combivent and Advair help Edwards breath better. (R. 317) Edwards also complained that "since she has had the mastectomy, she has felt weak and gets tired very easily." (R. 318) Additionally, Edwards complained of joint pain in her neck that radiates down her left arm to her fingers, causing numbness and pain, as well as non-radiating lower back pain. (R. 318) Finally, Edwards complained "of pain in her left wrist, gives no history of any injury to the left wrist." (R. 318)

Upon physical examination, Dr. Athar noted that Edwards' neck "was slightly tender on palpation of the cervical spine," but that her range of motion of her cervical spine was within normal limits. (R. 321) Edwards was also "tender on palpation of the lumbosacral spine." (R. 322) Dr. Athar also noted that Edwards' straight leg raising test was negative for pain and that she had "good strength in both her legs." (R. 322) Interestingly, Dr. Athar simultaneously noted that Edwards "was unable to squat and rise, she was unable to stand or walk on her heels or on her toes." (R. 324) Further, Dr. Athar noted that Edwards "was able to make a tight fist with both her hands, and she had good strength on both her hands." (R. 323) Dr. Athar did request an x-ray of her cervical and lumbar spine which revealed lower facet degenerative joint disease and possible degenerative disc disease. (R. 323) In terms of Edwards' respiratory problems, Dr. Athar observed "normal breath sounds with no added sounds" and "no rales or wheezes audibile." (R. 321)

In addition to the medical history described above, Dr. Athar noted that Edwards has also been diagnosed with GERD, hypertension and hypothyroidism. (R. 324) Dr. Athar noted that Edwards had been taking Mavik and Lasix for her hypertension and that her blood pressure was "under fairly good control" with the medications. (R. 320) Additionally, Edwards was taking Prevacid for her GERD and Synthroid for her hypothyroidism, (R. 320, 324), which controlled her symptoms. As a result of this examination, Dr. Athar opined that "[b]ecause of her problems with weakness, joint pain, depression, and breast cancer, I feel that she will have difficulty in doing any kind of work outside her home." (R. 324)

Two reviewing state agency physicians disagreed with Dr. Athar and concluded that Edwards maintained the residual functional capacity to work. (R. 327-33) Drs. Surrusco and

8

McGuffin reviewed the medical evidence of record and concluded that Edwards could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an eight-hour workday, and sit for a total of about 6 hours in an eight-hour workday. (R. 328) In addition, they opined that Edwards should only occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl and should never climb ladders, ropes or scaffolds. (R. 329) In reaching this conclusion, the reviewing state agency physicians considered the opinion of Dr. Athar, but noted that his opinion that Edwards would be unable to work outside her home is an issue reserved for the Commissioner. (R. 333)

In addition to the reviewing state agency physicians who evaluated Edwards physical limitations, two reviewing state agency psychologists, Drs. R.J. Milan, Jr. and E. Hugh Tenison, assessed Edwards' mental limitations, specifically depression. (R. 334-346) Drs. Milan, Jr. and Tenison noted that Edwards had no psychiatric hospitalizations and no history of outpatient mental health treatment. (R. 346) They did note that Edwards treating physician, Dr. Clark, diagnosed Edwards with depression stemming from her breast cancer treatment and the death of her father. (R. 346) Edwards was prescribed Lexapro, Klonopin, and Effexor. (R. 346) Drs. Milan, Jr. and Tenison determined that Edwards would have no restriction of activities of daily living, no difficulties in maintaining social functioning, and no repeated episodes of decompensation, each of extended duration. (R. 344) They did note, however, that Edwards would have mild difficulties in maintaining concentration, persistence, or pace. (R. 344) Drs. Milan, Jr. and Tenison opined that Edwards' depression was not severe. (R. 334)

The ALJ adopted the findings of the reviewing state agency doctors and, at step four of the sequential process, determined that Edwards could return to her past relevant work as a

sewing and knitting operator. (R. 21-22) At the administrative hearing in this matter, the vocational expert ("VE") testified, in response to a hypothetical from the ALJ, that an individual with the same age, education, background, vocational history and physical limitations specified by the reviewing state agency doctors would be able to work as a sewing and knitting operator. (R. 436) The ALJ relied upon this testimony to conclude that Edwards could return to her past relevant work. (R. 21)

## IV.

Edwards argues that the ALJ failed to appropriately consider and weigh the opinion of Dr. Athar, a consulting physician. The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). In determining the appropriate weight to give to a medical opinion, the ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. Id. A physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight."). Here, the ALJ adequately addressed the opinion of Dr. Athar and explained why he declined to afford it controlling weight. Before discussing Dr. Athar's opinion however, it must be noted that an opinion that an individual is disabled and therefore unable to work is not a medical opinion. Rather, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case. 20 C.F.R. § 404.1527(e).

The ALJ determined that "no significant weight can be afforded Dr. Athar's opinion that the claimant would have difficulty working outside the home." (R. 21) This determination was reached because:

> Dr. Athar did not specify limitations in functioning; and his conclusion regarding claimant's ability to work lacks support and consistency with the other evidence, including his own reported findings on physical examination. In this regard it is noted that no treatment relationship with Dr. Athar has been established; and, that no treating physician has specified limitations in functioning or imposed greater limitations than those established herein.

(R. 21) The ALJ's determination that Dr. Athar's opinion should not be afforded significant weight is supported by substantial evidence and is consistent with 20 C.F.R. § 404.1527. The treating relationship between Edwards and Dr. Athar was minimal, as Dr. Athar only saw Edwards on one occasion. Further, Dr. Athar's opinion is neither supported by his own findings nor by diagnostic and clinical testing. For example, Dr. Athar noted that Edwards "was able to make a tight fist with both her hands, and she had good strength on both her hands," (R. 323), and that she "had good strength in both her legs." (R. 322) Further, Dr. Athar observed Edward's range of motion in her cervical spine to be within normal limits. (R. 321) Dr. Athar did not observe any rales or wheezes and noted that Edwards "had normal breath sounds with no

11

added sounds." (R. 321) According to Dr. Athar, Edwards "had no problem raising her arms over the head, but abduction of the shoulder joints was restricted to 130 degrees on the right and 100 degrees on the left." (R. 324) Based on these findings, Dr. Athar made a conclusory determination that Edwards would be unable to do "any kind of work outside her home," despite the fact that Dr. Athar's own findings do not support this conclusion.

In deciding not to afford Dr. Athar's opinion significant weight, the ALJ relied upon the entirety of the medical evidence as well as the opinions of the state agency reviewing physicians. (R. 21) The state agency reviewing physicians explicitly considered Dr. Athar's opinion before determining that Edwards could perform light work. (R. 333) The state agency reviewing physicians noted Dr. Athar's opinion that Edwards could not work outside the home, properly determined that the issue of disability is reserved to the Commissioner, and opined that Edwards would retained physical capabilities consistent with performing light work. (R. 333) In relying on their opinion, the ALJ found their opinions to be consistent with the medical evidence of record and therefore afforded it considerable weight. (R. 22) The record clearly indicates that Edwards' hypertension, hypothyroidism, GERD, and respiratory difficulties are well controlled by various medications. Likewise, Edwards' muscoloskeletal difficulties do not produce such physical limitations sufficient for a finding of disability. The records from her physical therapy sessions are highly persuasive on this point, as Edwards reported her pain to be a zero on a scale of ten and also reported significantly reduced numbness in her fingers as a result of her physical therapy. (R. 356-57) Further, while Edwards did battle breast cancer, her treatment records do not show any recurrence of the cancer and her treatment has been successful. As such, Dr. Athar's opinion that Edwards cannot work because of "her problems with weakness, joint pain,

12

depression, and breast cancer,"(R. 324), is unsupported by his own notes, the medical evidence of record, and the opinions of the reviewing state agency physicians. The ALJ's decision not to afford Dr. Athar's opinion significant weight is thus supported by substantial evidence.

Similarly, the ALJ determined that Edwards could return to her past relevant work as a sewing and knitting machine operator at step four of the sequential analysis. (R. 22) Edwards argues that the ALJ erred in making this determination because she has difficulty using her hands. As noted above, however, even Dr. Athar, who Edwards attempts to rely on, notes that Edwards "was able to make a tight fist with both her hands, and she had good strength on both her hands." (R. 323) As such, Edwards' argument on this point is not persuasive, and the ALJ's decision is supported by substantial evidence.

Edwards also argues that the ALJ's decision that she could return to her past relevant work as a sewing/knitting machine operator was undermined by her testimony that she had a sympathetic employer and fellow employees who compensated for her clear inability to handle her job tasks. The decision of the ALJ, however, was based on the testimony of a VE with knowledge of how Edwards' past relevant work at the knitting plant and at the motel are performed in the general economy. The VE's testimony was premised on a hypothetical person having the same characteristics present in the detailed state agency RFC done on Edwards by Dr. McGuffin. (R. 327-33) Thus, regardless of Edwards' testimony that her employer at the knitting plant was sympathetic to her health concerns, the state agency medical evaluation and the VE's testimony amply support the ALJ's conclusion that she could return to her past relevant work.

13

Edwards also argues that the ALJ "erred in determining that Claimant was not fully credible and failed to provide any detailed analysis regarding his opinion of her diminished credibility." (Pl. Br. 2) Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). The ALJ found that Edwards' "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Edwards'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 21) Contrary to Edwards' contention, the ALJ thoroughly analyzed the issue of Edwards' credibility, relying on both the medical evidence of record and Edwards' own report of her daily activities. (R. 21) The ALJ noted that Edwards testified at the hearing that "she spends much of the time lying in bed, but acknowledged that she drives short distances, washes dishes and folds laundry, accompanies her husband when he goes shopping, and goes with him to visit his relatives." (R. 20) The ALJ also considered Edwards' written report of her daily activities. (R. 21) In terms of the medical evidence, the ALJ noted that "[t]he limited need for medications or other treatment during much of the period at issue, lack of objective findings of significant abnormality, and relatively benign physical examinations, belie allegations of disabling symptoms and limitations." (R. 21) Edwards argues that her testimony at the administrative hearing demonstrates that her daily activities are far more limited than found by the ALJ. On the contrary, it is clear from the detailed analysis in the ALJ's decision that careful attention was paid to her medical and work history, her testimony and the other evidence of record. Given that credibility determinations are in the province of the

14

ALJ, and because the ALJ provided a detailed credibility analysis, there is no basis in this record to overturn the ALJ's credibility determination.

Considering the evidence in the administrative record as a whole, the court finds that the Commissioner's decision meets the substantial evidence standard. Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case; rather, the court's role is to determine whether the Commissioner's decision is supported by substantial evidence. Considering that the Supreme Court has defined substantial evidence to be more than a mere scintilla and somewhat less than a preponderance, Pierce v. Underwood, 487 U.S. at 565, Richardson v. Perales, 402 U.S. at 401, it is clear that the evidence in the record in this case meets the substantial evidence standard.

## V.

As an alternative to holding the ALJ erred in finding plaintiff not disabled, Edwards requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence. Sentence six authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. For the reasons outlined below, the evidence submitted to the court for consideration by plaintiff does not meet the standard outlined in Borders and thus, a remand is not warranted in this case.

15

In Borders, the Fourth Circuit held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met. Borders, 777 F.2d at 955. First, the evidence must relate back to the time the application was first filed, and it must be new, in that it cannot be merely cumulative. Id.; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Second, the evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her. Borders, 777 F.2d at 955. Third, there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner. Id. Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Id.

In support of her argument to remand the case under sentence six of 42 U.S.C. § 405(g), Edwards submitted two Medical Source Statements of Ability to Do Work-Related Activities ("Source Statement"), one mental and one physical, a Clinical Assessment of Pain, and medical records from June 1, 2006 through November 30, 2006. Edwards has met the fourth requirement of the Borders test in this case, as she has provided the court with the evidence to be considered on remand and the court understands its nature. See Borders, 777 F.2d at 955.

The evidence submitted by Edwards fails to meet the other three requirements of Borders. Accordingly, the case cannot be remanded based on the new evidence submitted by Edwards. Both the physical and mental Source Statements and the Clinical Assessment of Pain were completed on March 7, 2007 by Mary Martin, an adult nurse practitioner ("ANP"). The Source Statements do not relate back to the relevant time period as they were both done over 6 months after the ALJ rendered his decision. As such, they do not warrant a remand.

16

Further, the Source Statements and Clinical Pain Assessment are simply checklists filled out by ANP Martin and cannot be considered material under the standard established in Borders. As discussed previously, an ALJ is required to analyze every medical opinion submitted and weigh them accordingly. ANP Martin, in the physical Source Statement, indicates that Edwards could occasionally lift and/or carry less than 10 pounds, could not frequently lift and/or carry any amount of weight, stand and/or walk less than 2 hours in an eight hour workday, and would be limited in pushing and/or pulling in her upper extremities. In addition, she opined that Edwards should never climb ramps, ladders, ropes or scaffolds, and/or stairs, balance, stoop, kneel, crouch, or crawl. In support of these severe limitations, ANP Martin notes that Edwards has a herniated disc and degenerative disc disease. The severe physical restrictions delineated by ANP Martin, however, are not supported by any new medical evidence that was not before the ALJ when the determination to deny disability was first made. As such, this evidence is only an opinion based on information that the ALJ would have already considered. Because the ALJ accepted the opinion of the reviewing state agency doctors and decided not to afford significant weight to Dr. Athar's opinion, the opinion of ANP Martin is unlikely to change the decision of the ALJ and is therefore not material.

In the same vein, the mental Source Statement filled out by ANP Martin is unlikely to change the ALJ's decision and is therefore not material. Again, nothing in the mental Source Statement is based upon any new objective clinical or diagnostic testing. The opinion simply states that Edwards' depression and pain require medication and cause insomnia. This medical evidence was before the reviewing state agency psychologists, who determined that Edwards retained the mental capacity to work. In addition, ANP Martin indicates that Edwards suffers

17

from panic disorder which limits her ability to be in large groups of people. There is no other mention in the record of panic disorder and as such this mention of panic disorder is unsubstantiated by the medical evidence. Therefore, the opinion of ANP Martin as to Edwards' mental health would not change the decision of the ALJ and is not material under Borders.

The Clinical Pain Assessment completed by ANP Martin would also not change the decision of the ALJ and is therefore not material. Again, the opinion supplied in the Clinical Pain Assessment is not based on any new objective medical evidence and is solely the opinion of a nurse practitioner that the ALJ would consider. Much like the physical Source Statement, the opinion of ANP Martin as to Edwards' pain is not supported in the record and would therefore be afforded little weight. As such, the decision of the ALJ would remain the same thus obviating the need for remand based on this evidence.

Additionally, there is no indication in the record as to why Edwards failed to present this kind of opinion evidence when the matter was before the Commissioner. Absent a showing of good cause as to why this information was not presented to the Commissioner, Edwards does not meet the standard enunciated in Borders and the court must affirm the decision of the Commissioner.

## VI.

In affirming the final decision of the Commissioner, the court does not suggest that Edwards is totally free of all pain and subjective discomfort. Edwards' difficult battle with breast cancer and her survival is noted by the court. The objective medical record, however, simply fails to document the existence of any condition or combination of conditions which would reasonably be expected to preclude Edwards from returning to her previous work. It

18

appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Edwards' claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Further, the new evidence submitted by Edwards is insufficient to warrant a remand. Defendant's motion for summary judgment must be granted.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This 20th day of February, 2008.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge